### ROSENTHAL et al. v. PERKINS et al.

#### Sac. No. 346; May 31, 1898.

##### 53 Pac. 444.

**Attachment—Redelivery Bond—Assignments for Creditors.—** Code of Civil Procedure, section 555, provides for the release of attached property on the giving of a bond for redelivery to the proper officer, if judgment be for plaintiff. Laws of 1880, chapter 87, section 17, makes an assignment within one month after the attachment operate as a dissolution thereof, and section 45 permits plaintiff who had a valid lien of attachment on property released under a redelivery bond to prosecute the case to final judgment in order to fix liability of sureties. Held, that section 45 does not apply to attachments within one month preceding the assignment, the sureties being released by dissolution of the attachment.

APPEAL from Superior Court, Madera County; W. M. Conley, Judge.

Action by N. Rosenthal and L. Kutner, partners, against R. E. Perkins and others.   From a judgment for plaintiffs and from an order denying a new trial defendants appealed. Reversed.

L. L. Corey and Wm. T. Searles for appellants; Francis A. Fee for respondents.

HAYNES, C.—On August 18, 1893, the plaintiffs in this action commenced an action in justice's court against one James Brusie to recover the sum of $269.82, and procured a writ of attachment to issue, and the same was levied on personal property of the defendant, Brusie. On August 21st Brusie executed a redelivery bond, upon which the defendants in this action were sureties. The said bond or undertaking was conditioned as required by section 555 of the Code of Civil Procedure, and upon its execution the constable released the property. The foregoing facts were formally and sufficiently alleged in the complaint, and the plaintiffs then proceeded to allege that afterward, on the sixth day of September, 1893, Brusie, upon his own petition, was, by an order of the superior court of Madera county duly given and made, adjudged an insolvent debtor; that afterward said superior court made an order permitting the said suit of the plaintiffs against Brusie to be proceeded with "for the purpose of fixing the liability of the said sureties, defendants herein, upon said bond or undertaking given for the release of said attached property, and for no other purpose"; that on September 25, 1893, judgment was rendered by the justice of the peace against Brusie for the sum of $317.32, including interest and costs; that afterward plaintiffs demanded of Brusie and of his assignee in insolvency, and of each of the said sureties, "the return of the property attached in accordance with the conditions of said undertaking, or that they pay the value thereof"; but that each of them refused to comply with such demand, and prayed judgment for said sum of $317.32, with interest and costs. A demurrer to the complaint was overruled, and the defendants answered, alleging substantially the same facts concerning Brusie's insolvency which were alleged in the complaint. Defendant Perkins pleaded his discharge in insolvency. The cause was tried by the court, findings were filed following the allegations of the complaint, and judgment was entered thereon for the plaintiffs. The defendants appeal from the judgment, and from an order denying a new trial.

The question presented in this case is whether the adjudication of Brusie's insolvency within thirty days after the attachment was issued, and after the redelivery bond was executed, and the property released from the attachment thereunder, operated to relieve the sureties thereon from liability.

That the adjudication of insolvency did have that effect, I think, is clear. Section 17 of the insolvency act of 1880, then in force, provides that the "assignment shall relate back to the commencement of the proceedings in insolvency, and by operation of law shall vest the title to all such property and estate, both real and personal, in the assignee, although the same is then attached on mesne process as the property of the debtor, and shall dissolve any attachment made within one month next preceding the commencement of the insolvency proceedings. Such assignment shall operate to vest in the assignee all the estate of the insolvent debtor not exempt by law from execution": Laws 1880, c. 87. It has been held in other jurisdictions that the dissolution of the attachment discharges the obligation of the sureties in a redelivery bond: See Drake, Attachm., secs. 341b, 341c, and cases there cited. Whether that is true here in cases where the attachment is dissolved upon motion of the defendant upon the ground that it was improperly or irregularly issued, we need not inquire, though all the cases cited by Drake under said sections were cases of bankruptcy and cases of like character, where the redelivery became impossible by operation of law; and in that class of cases I think the author's conclusion is sound, and the case before us is of that class This is apparent upon the face of section 555 of the Code of Civil Procedure, under which the bond here in suit was given, and from the condition of the bond itself, which is "that, in case the said plaintiff recover judgment in said action, the defendant will, on demand, redeliver such attached property so released to the proper officer, to be applied to the payment of the judgment, or will pay," etc. The attachment having been absolutely dissolved by the adjudication of insolvency, and as no writ of execution could issue upon the judgment, there was no "proper officer" to whom the defendant could deliver the property, and hence the demand required the defendant to do a thing which by operation of law had become impossible, and the failure to do it could give no right of action upon the bond. The demand may be made by the plaintiff in the action as well as by the officer, but it is necessary that there should be an officer clothed with authority to receive the property and sell it: Brownlee v. Riffenburg, 95 Cal. 447, 30 Pac. 587. This the officer could not do without an execution.

Besides, section 552 of the Code of Civil Procedure provides: "If the execution be returned unsatisfied, in whole or in part, the plaintiff may prosecute any undertaking given pursuant to section 540 or section 555, or he may proceed, as in other cases, upon return of an execution"; and in Brownlee v. Riffenburg, 95 Cal. 448, 449, 30 Pac. 588, it is said this section "in effect declares that unless or until an execution is issued and returned, no such prosecution shall be had"; that is, that said section makes the issuance and return of an execution a condition precedent to the right to commence an action upon the bond. This is the general rule, and applies in all cases except the one which will be presently noticed. Respondents cite the last clause of section 45 of the insolvent act, which reads: "Provided, that where a valid lien or attachment has been acquired or secured in any such action, and an undertaking has been offered and accepted in lieu of such lien or attachment, the case may be prosecuted to final judgment for the purpose of fixing the liability of the sureties upon such undertaking; but execution against the insolvent upon such judgment shall be stayed." It is contended that this provision authorizes this action against the sureties. It will be observed, however, that section 17 of the act operates to dissolve only those attachments "made within one month next preceding the commencement of insolvency proceedings." Attachments made more than one month before insolvency proceedings are commenced are not affected, and therefore are not dissolved, but remain valid for all purposes. In such case the property attached is not released by operation of law, and the attaching creditor has all the rights and remedies he would have had if the defendant in the action had not been adjudged an insolvent, save and except that of an execution against him where the attached property has been released by giving a redelivery bond; and in such case the allegation that more than one month after the attachment was made the debtor was adjudged insolvent, would relieve the plaintiff from alleging that an execution had been issued and returned unsatisfied. In this case the sureties on the bond, not being liable thereon, could not prove a claim against the insolvent under section 41 of the act, as supposed by respondent. The questions in this case must be determined under our own statutes and decisions, and it is therefore not necessary to

review the cases cited from other jurisdictions. As the complaint cannot be amended so as to state a cause of action, the judgment and order appealed from should be reversed, with directions to dismiss the action.

We concur: Chipman, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are reversed, with directions to dismiss the action.